IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

SEP 25 2026

FILED

ANIKA BLANKENBURG and SASCHA BLANKENBURG, *
Plaintiffs, *
v. * CV 122-156
FORT GORDON SPOUSES AND CIVILIAN CLUB, INC., JANE DOE, JOHN DOE, and UNITED STATES OF AMERICA, *
Defendants. *

# O R D E R

Before the Court are Plaintiffs' first motions for partial summary judgment (Docs. 114, 117),[1] Plaintiffs' motion to withdraw their first motion for partial summary judgment (Doc. 119),[2] and Plaintiffs' second motion for partial summary judgment (Doc. 121). For the following reasons, Plaintiffs' motion to withdraw their first motion for partial summary judgment (Doc. 119) is **GRANTED**, Plaintiffs' first motions for partial summary judgment (Doc. 114, 117) are **DISMISSED AS MOOT**, and Plaintiffs' second motion for partial summary judgment (Doc. 121) is **DENIED**.

[1] Plaintiffs re-filed their first motion for partial summary judgment (Doc. 114) because it was an unsigned pleading. (Doc. 116, at 1; Doc. 117.)

[2] Plaintiffs' motion to withdraw their first motion for partial summary judgment is **GRANTED**, and the Court only analyzes their second motion for partial summary judgment.

## I. BACKGROUND

This case arises from an allegedly defective display case that fell and injured Plaintiff Anika Blankenberg ("Anika"). Anika was an employee at the Fort Gordon Thrift Shop ("Thrift Shop"). (Doc. 121-2, at 1; Doc. 124-1, at 2.) Defendant Fort Gordon Spouses and Civilians Club ("FGSCC") operated the Thrift Shop and leased the building from the United States via the Department of the Army (the "Army"). (Doc. 121-2, at 1; Doc. 124-1, at 1-2.)

On January 22, 2021, Anika was working at the Thrift Shop and emptied the contents of a display case, opened the case doors, sat down to spray paint the base, and heard a "weird crack." (Doc. 121-2, at 3; Doc. 124-1, at 5; Doc. 124-3, at 70.) Then, the display case fell onto Anika, struck her head and arm, knocked her unconscious, and trapped her inside for thirty minutes. (Doc. 121-2, at 3; Doc. 124-1, at 5-6.) After help arrived, both her coworkers and husband, Plaintiff Sascha Blankenburg, had to lift the display case to free Anika. (Doc. 121-2, at 3; Doc. 124-1, at 5-6.) Anika suffered injuries as a result of the display case falling on her. (Doc. 121-2, at 4; Doc. 124-1, at 8.)

After the incident, an Army investigator determined "the cabinet was mounted on an approximately 2' tall three-sided wooden platform, which without securing it to the wall, presented a potentially unstable base." (Doc. 121-2, at 3; Doc. 124-1, at 7.) He further found "[i]f both doors were opened to the right side of

the cabinet frame while working on the cabinet, and the shelves removed from the left side which could have shifted the center of gravity forward," then "[t]he result would likely have been the cabinet falling unexpectedly." (Doc. 121-2, at 3-4; Doc. 124-1, at 7.)

Plaintiffs contend that the Fort Gordon Safety Office conducted a safety inspection on February 14, 2012, and noted that the "heavy display cabinets, bookcases, and file cabinets" were "stable but not secured." (Doc. 121-2, at 2.) Defendants dispute any hazardous conditions were identified. (Doc. 124-1, at 6.) Plaintiffs state the Fort Gordon Safety Office conducted additional inspections on January 20, 2014; June 18, 2015; and June 28, 2017, but none reported a hazardous display case. (Doc. 121-2, at 2; Doc. 124-1, at 4.) Anika was unaware the display case was not secured. (Doc. 121-2, at 2; Doc. 124-1, at 5.)

On December 16, 2022, this case was removed from the Superior Court of Columbia County, Georgia. (Doc. 1, at 1.) On December 21, 2023, Plaintiffs filed a second amended complaint, the operative complaint. (Doc. 54.) On May 1, 2026, Plaintiffs filed a second motion for partial summary judgment against Defendant United States of America ("USA"). (Doc. 121.) On May 22, 2026, Defendant USA responded. (Doc. 124.) On June 4, 2026, Plaintiffs replied. (Doc. 125.) Plaintiffs' motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The Court must view factual disputes in the light most favorable to the non-moving party and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. "When the moving party has the burden of proof at trial, that party must show

affirmatively the absence of a genuine issue of material fact: it 'must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial.'" Four Parcels of Real Prop., 941 F.2d at 1438 (emphasis omitted) (quoting Celotex Corp., 477 U.S. at 331 (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" Id. (quoting Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)).

In this action, the Clerk of Court provided Defendants notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 122.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

## III. DISCUSSION

Plaintiffs seek summary judgment to establish "Defendant's liability for negligent failure to properly inspect, maintain, and warn of the dangerous condition that the Defendant knew or should

have known of the unsecured subject display case." (Doc. 121-1, at 3.) Plaintiffs argue summary judgment is warranted based on (1) negligence per se and (2) failure to exercise ordinary due care to Anika as an invitee. (Id.) The Court analyzes each issue in turn.

**A. Negligence Per Se**

Plaintiffs argue Defendant violated Army regulation ("AR") 385-10, and such a violation creates a presumption of negligence. (Id. at 10.) A plaintiff may show a duty imposed by citing a valid statutory enactment. Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 716 (Ga. Ct. App. 2011). In Georgia, a claim for "negligence per se arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against." Goldstein, Garber & Salama, LLC v. J.B., 797 S.E.2d 87, 92 (Ga. 2017) (citation omitted). A violation of an ordinance or regulation may substitute for a statutory violation in a Georgia negligence per se claim. Combs v. Atlanta Auto Auction, Inc., 650 S.E.2d 709, 714 (Ga. Ct. App. 2007); McLain v. Mariner Health Care, Inc., 631 S.E.2d 435, 437 (Ga. Ct. App. 2006) (citations omitted) (noting federal regulations "can likewise establish that a defendant breached a duty owed to a plaintiff as a matter of law"). Negligence per se supplies the duty and breach elements of negligence. Cent. Anesthesia Assocs., P.C. v. Worthy, 333 S.E.2d 829, 831 (Ga. 1985).

"[T]he plaintiffs must still prove a causal connection (proximate cause) between the breach of th[e] statutory duty and the injuries sustained . . . as well as their damages." Id.

Plaintiffs argue the applicable federal safety regulation in effect during January 2021 was AR 385-10. (Doc. 121-1, at 7.) AR 385-10 states "Military and [Department of the Army ("DA")] Civilian officials at each management level will promote strong safety programs, safe working conditions, and safe performance to prevent accidents, injuries, and occupational illnesses." (Doc. 124-4, at 93.) AR 385-10 further states "All Army leaders at each echelon will develop and implement functions and written procedures as part of the Army Safety Program and the Army Occupational Health Program to fulfill the following Army and OSHA requirements: . . . "Reporting of unsafe and unhealthful conditions." (Id.) Finally, AR 385-10 states "Processes will be developed at and for the installation level to— . . . [e]nsure that workplaces are free from recognized hazards that are causing or are likely to cause death or serious physical harm[;] [c]orrect safety deficiencies that are likely to cause an accident, injury, or occupational illness." (Id. at 83-84.)

Plaintiffs argue Defendant violated AR 385-10 by failing to ensure the Thrift Shop was free from known hazards that would likely cause serious physical harm to the public, DA civilians, and military members. (Doc. 121-1, at 9.) Plaintiffs argue even "cursory inspections that were conducted negligently failed to

detect the hazard." (Id. at 9-10.) Plaintiffs argue there is a presumption of negligence under negligence per se based on Defendant's violation, and Defendant cannot show its "actions were reasonable under the circumstances." (Id. at 10 (internal quotations omitted).) Plaintiffs also assert Anika was in the protected class AR 385-10 was intended to protect from the harm she suffered. (Id. at 9.) As a result, Plaintiffs argue "Defendant failed in its duty to reduce the risk of harm particularly protected by the regulations." (Id. at 10.)

Defendant argues Anika was not in the class AR 385-10 was intended to protect because Chapter 16 only applies to "Soldiers and DA Civilians." (Doc. 124, at 7.) Defendant assert it is undisputed that Anika was not a soldier or a civilian employed by the Department of the Army. (Id.) Defendant further argues that the Thrift Shop is a private organization that operates on the military installation, but Defendant has no duty to ensure compliance with AR 385-10 or other OSHA related requirements. (Id. at 8.) Instead, "Defendant FGSCC was the party responsible for ensuring that its employees working at the Thrift Shop . . . had an appropriately safe workplace." (Id.) Also, Defendant argues it is not liable under Chapter 17-6(d) for "inspection of workspaces in contractor activities" because FGSCC was not a contractor of the Army but a private organization and tenant. (Id. at 9; Doc. 124-4, at 95.) Defendant argues any inspections were thus discretionary. (Doc. 124, at 10.)

In reply, Plaintiffs argue that AR 385-10 protects Anika because it applies to "all Army equipment, systems, operations, and workplaces" and "will be implemented in all Army operations with the exception of military-unique operations." (Doc. 125, at 10.) Plaintiffs also raise a new argument that AR 385-10's Part 1 applies "army wide," and Chapter 1-5 "requires supervisory personnel to maintain a safe and healthful workplace, inspect the work area for hazards, and promptly evaluate and take action as required to correct hazards." (Id. (alterations adopted and quotations omitted).) Also, Plaintiffs argue Chapter 1-6 mandates "the Army will comply with the requirements in all nonmilitary DOD operations and workplaces, regardless of whether work is performed by military or DA Civilian personnel." (Id. at 3 (alteration adopted).) Lastly, Plaintiffs argue Defendant's own history of conducting a safety inspection in 2020 imposed a duty to conduct subsequent inspections of the Thrift Shop. (Id. at 11.)

The Court finds Anika was not a member of the protected class for negligence per se. Part 3 of the AR clearly states it applies to "Soldiers and DA Civilians," which does not include Anika. (Doc. 124-4, at 92.) Although Anika argues the Army Regulations apply to her, the employment agreement between her and the Thrift Shop clearly states "[FGSCC] is a private, nonprofit organization, which is not affiliated with Fort Gordon or the US Army." (Doc. 124-3, at 148.) Anika also testified that no one from the Army hired her or supervised her. (Id. at 23-25.) Although Plaintiffs

argue Chapters 1-5 and 1-6 apply to the Thrift Shop, Chapter 1-5 clearly includes "Soldiers and DA Civilians at all levels," and Chapter 1-6 begins as "It is Army policy . . . ." (Doc. 124-4, at 25-26.) Because Anika is not a soldier or DA civilian, she is not within the class of persons AR 385-10 was intended to protect, and negligence per se does not apply. Thus, Plaintiffs' motion for summary judgment is **DENIED** on this ground.

**B. Duty of Care**

Plaintiffs argue Defendant is liable for the Federal Tort Claims Act claim as a landowner that failed to exercise ordinary care to Anika's status as an invitee. (Doc. 121-1, at 3, 10.) Plaintiffs argue Defendant had actual and constructive knowledge that the storage case was not secure based on a 2012 inspection. (Id. at 13.) Plaintiffs further argue Defendant negligently inspected the premises in 2014, 2015, and 2017 and failed to find or repair the unsecured display case. (Id. at 14.) Plaintiffs argue Defendant's failure to act led to the shelf falling and causing Anika's injury. (Id. at 13.) Plaintiffs assert that Defendant's knowledge in conjunction with Anika's lack of knowledge about the unsecured display case satisfies the requirements of a premises liability claim to an invitee. (Id. at 11-12, 14.) Also, Plaintiffs argue Anika was an invitee and not a licensee because she "benefit[ted] Army families, military members, and employees on the base" based on her job and the nature of the business. (Id. at 15-16.)

Defendant argues O.C.G.A. § 44-7-14 expressly limits tort liability of a landlord "to third persons for damages resulting from the negligence or illegal use of the premises by the tenant." (Doc. 124, at 12.) However, Defendant argues it granted Defendant FGSCC the right of possession over the building as its tenant. (Id. at 13.) Thus, Defendant argues it was the landlord of Anika's employer, so whether Anika was an invitee or licensee to her employer makes no difference because such liability is not imputed to Defendant. (Id.) Because Plaintiff was injured by personal property of the Thrift Shop and not the structure itself, Defendant argues FGSCC would be liable. (Id. at 13-14.) Moreover, Defendant argues retaining the right to inspect the building does not alter the limitation of liability under Georgia law. (Id. at 13.)

Plaintiffs assert that regardless of any statutory limits to liability, Defendant assumed a duty of care when it voluntarily inspected the Thrift Shop for safety hazards. (Doc. 125, at 4.) Plaintiffs cite Huggins v. Aetna Cas. & Sur. Co.:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Id. (citing 264 S.E.2d 191, 192 (Ga. 1980)).) Plaintiffs further argue that since Defendant conducted an inspection,

noting that shelving and cabinets were "stable, but not secured," it had a duty to "safely maintain[] the thrift store." (Id. at 4-5, 7.)

In Georgia, an owner of real property generally owes a duty of care to invitees:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

O.C.G.A. § 51-3-1. This statute, by its terms, only applies to invitees. Id. "The 'accepted test' for invitee status in Georgia is whether the purported invitee's presence is of 'mutual benefit' to the purported invitee and the landowner." Tobar v. United States, 696 F. Supp. 2d 1373, 1378 (S.D. Ga. 2009) (citation omitted). Alternatively, a licensee is defined under Georgia law as a person who "(1) [i]s neither a customer, a servant, nor a trespasser; (2) [d]oes not stand in any contractual relation with the owner of the premises; and (3) [i]s permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification." O.C.G.A. § 51-3-2.

However, a landlord who has "fully parted with possession and the right of possession" is not responsible for injuries caused by the negligence of the tenant. O.C.G.A. § 44-7-14. "[A] landlord who relinquishes possession of the premises cannot be liable to third parties for damages arising from the negligence of the

tenant." Colquitt v. Rowland, 463 S.E.2d 491, 492 (Ga. 1995) (citation omitted). Instead, liability depends upon control of the property, not ownership. Dixon v. Infinity Broad. E., Inc., 656 S.E.2d 211, 213 (Ga. Ct. App. 2007); Hodge v. United States, 310 F. Supp. 1090, 1098 (M.D. Ga. 1969), *aff'd*, 424 F.2d 545 (5th Cir. 1970) ("Georgia law recognizes that a landowner can relinquish control over a portion of his premises and is thereafter relieved of the duties [to invitees].").

Here, the relationship between Defendants USA and FGSCC is analogous to a landlord-tenant relationship. Defendant USA owns the real property, and Defendant FGSCC occupies it and operates the Thrift Shop. (Doc. 121-2, at 1; Doc. 124-1, at 1-2.) Accordingly, the Court finds there is a genuine dispute of material fact as to whether Defendant had a duty to use ordinary care after inspecting the Thrift Shop. See O.C.G.A. § 44-7-14. While Plaintiffs argue Defendant USA retained a duty to inspect its real property for defects, Anika's injury was caused by personal property in the Thrift Shop, and the duty to inspect does not extend to the inspection of personal property or fixtures installed by others. Lewis v. Axens N.A., Inc., No. 4:14-CV-27, 2014 WL 5311196, at *3 (S.D. Ga. Oct. 15, 2014) (finding a landlord did not violate any duty to tenant's employee where it retained its duty to inspect because the injury was caused by the tenant's machine and not the landlord's property). Thus, the Court need

not examine whether Anika was an invitee or licensee under O.C.G.A. § 44-7-14. As such, Plaintiffs have failed to meet their burden and show there is no genuine dispute of material fact as to Defendant's liability. Therefore, Plaintiff's partial motion for summary judgment is **DENIED** as to Defendant USA's duty of care to Anika.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' motion to withdraw their first motion for partial summary judgment (Doc. 119) is **GRANTED**, Plaintiffs' first motions for partial summary judgment (Doc. 114, 117) are **DISMISSED AS MOOT**, and Plaintiffs' second motion for partial summary judgment (Doc. 121) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 25th day of September, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA